NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS J. SJOBLOM | |
| Plaintiff, | CIVIL NO. 05-1042 (SRC) |
| v. | |
| | **OPINION** |
| JERSEY SHORE MEDICAL CENTER | |
| Defendant. | |

**CHESLER, District Judge**

  **THIS MATTER** comes before the Court on a Motion for Summary Judgment brought by Defendant Jersey Shore Medical Center[1] ("JSMC") (docket entry #11). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendant's Motion, granting Summary Judgment in favor of the Defendant.

### I. BACKGROUND

  The Defendant, JSMC, is a hospital affiliated with Meridian Health System. The Plaintiff is a former employee of JSMC. He worked for JSMC since 1975, and his last position was as a

---

[1] Jersey Shore University Medical Center was incorrectly named in this suit as "Jersey Shore Medical Center."

1

medical technologist in the hospital's microbiology department.  In this position, the Plaintiff worked a shift from 1:30 p.m. to midnight, four days per week, and earned an hourly wage of $30.04 per hour.

JSMC had a medical leave of absence policy, which allowed eligible employees who worked at least 1,000 hours to take medical leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.  This leave is an unpaid leave of absence, which cannot exceed twelve weeks in a twelve month period - measured forward from the date an employee's first medical leave commenced.  When an employee returns from an FMLA leave, JSMC guarantees the employee his or her specific job upon their return to work.  In addition to FMLA leave, JSMC permits employees to take an additional three months of medical leave pursuant to the hospital's leave of absence policy.  During this "second phase" of leave, however, the employee is not guaranteed their specific job upon returning to work.  Instead, they are guaranteed a position of comparable pay and status, with no guarantee regarding shift or location of the new job.  Combining JSMC's FMLA leave and the additional leave available under the hospital's policies, employees can take up to 180 days of unpaid medical leave in a twelve month period, measured forward from their first day of leave.

On September 3, 2002, the Plaintiff sustained a neck injury from a fall in his bathtub at home.  He was ordered by his doctor not to return to work for a week or two, so the Plaintiff requested a leave of absence from JSMC, effective from September 4, 2002.  JSMC granted this leave request, and began calculating the Plaintiff's twelve month eligibility period starting on the first day of his leave, September 4, 2002.  On September 23, 2002, the Plaintiff was involved in a non-work related car accident.  As a result of injuries from this accident, the Plaintiff requested

another leave of absence from JSMC, even though he had not returned from the leave commenced on September 4, 2002. This leave was granted.

On February 3, 2003, the Plaintiff submitted a request to continue his leave of absence until February 17, 2003. On February 18, 2003, Plaintiff sought to return to work, and inquired about the status of his former job. The Plaintiff's former job had not been filled, but was in the process of being converted into a web master position for JSMC's customer service department. JSMC offered the Plaintiff a position on the night shift (from midnight to 8 a.m.) in the hematology and chemistry department, at the same salary and benefits he was earning at his former position. The Plaintiff refused to accept this job, and failed to return to work. On March 6, 2003, JSMC informed the Plaintiff that his leave of absence had ended on March 3, 2003, and terminated his employment effective March 3, 2003.

On or about January 31, 2005, Plaintiff filed a one-count Complaint in New Jersey Superior Court in Monmouth County New Jersey asserting causes of action for alleged violations of the "FMLA", 29 U.S.C. § 2601, *et seq*. as well as violation of JSMC's own human resources policies and procedures. On or about February 18, 2005, the Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, on the grounds that the Plaintiff's claim for relief is based on the FMLA, so federal subject matter jurisdiction over this case was proper under 28 U.S.C. § 1331. On or about January 27, 2006, the Defendant filed the current motion for summary judgment.

### III.   DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324;  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

The Defendant argues, because JSMC provided the Plaintiff with six months of medical leave and guaranteed his former job for three months, both of which exceed the requirements of FMLA, he cannot sustain his claim that JSMC violated his rights under FMLA.  The purpose of

the FMLA is to "balance the demands of the workplace with the needs of families" by allowing employees to take up to twelve weeks of leave for medical reasons within a twelve month period. 29 U.S.C. §§ 2601(b)(1), (2); 2612(a)(1)(D).  In essence, the FMLA requires employers "hold" an employee's position while he or she is on leave, or to provide that employee with an equivalent position when he or she returns to work.  Employers may not interfere with or limit an employee's right to leave, and employees have a legal right of actions against employers who interfere with or deny an employee's right to FMLA leave.  See 29 U.S.C. §§ 2615(a); 2617.

A.    The Plaintiff's Family Medical Leave Act Claims are Without Merit.

Under the FMLA, employers are given some flexibility in how they calculate the twelve month period in which an employee may take their FMLA leave.  Employers may choose from four options: (1) use the calendar year; (2) use any fixed "leave year," such as a fiscal year or an employee's anniversary date; (3) a twelve month period counting forward from an employee's first day of leave taken; or (4) "[a] 'rolling' 12-month period measured backwards from the date an employee uses any FMLA leave."  29 C.F.R. § 825.200(b).  If an employer fails to select a method of calculation, "the method that provides the most beneficial outcome to the employee will be used."  29 C.F.R. § 825.200(e).

JSMC asserts, and it is not contested by the Plaintiff, that they use a twelve month period, counting forward from an employee's first day of leave taken, to calculate the period in which an employee may take their eligible FMLA leave.  It is also not contested that, under this calculation, the Plaintiff's FMLA leave expired on December 3, 2002 and that the additional leave provided under the hospital's leave policy expired on March 3, 2003.  The Plaintiff

contends, however, that JSMC failed to adequately notify him of the method of calculation used by JSMC and, accordingly, the method most beneficial to the Plaintiff should be applied. (Pl. Br. at 7-8.) Under the calendar year method of calculation, the Plaintiff would have been entitled to additional FMLA leave on January 1, 2003. This additional leave, the Plaintiff argues, would have allowed him to take twelve more weeks of FMLA leave, protecting his job until March 26, 2003. (Id. at 8.)

While the regulations that give employers the flexibility to choose an option for calculating FMLA leave eligibility, "they do not specifically state how an employer indicates its choice." Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1127 (9th Cir. 2001). The Ninth Circuit in Bachelder, however, held that the regulations "plainly contemplate that the employer's selection of one of the four calculation methods will be an open one, not a secret kept from the employees." Id. "While the Third Circuit has not spoken on the issue of notice addressed in Bachelder," Hill v. Underwood Memorial Hosp., 365 F.Supp.2d 602, 608 (D.N.J. 2005), this Court finds, based on the evidence before it, as a matter of law, that JSMC provided adequate notice to Mr. Sjoblom of its selection.

The Defendants argue that the Plaintiff was notified of the calculation method utilized by JSMC in calculating eligibility for FMLA leave through publication of the policy in JSMC's human resources policies and manuals. The Defendant claims that the calculation method was incorporated into Meridian's (the parent company of JSMC) Human Resources Policies and Procedures Manual (Def. Br. at 3.) which is available for employee review in each of the JSMC departments, including the HR department and the microbiology department where the Plaintiff worked. (Walker Decl. at ¶ 10.) The Defendant also claims that the calculation method is "set

6

forth" in the Meridian Employee Handbook which is distributed to all employees. (Def. Br. at 3.) The mention of the applicable calculation method in both of these documents, however, appears only in a discussion of retention of insurance coverage while on leave, where these documents note that Meridian will continue insurance benefits for three months or less in a twelve week period "measured forward from the date that [the employee's] first leave commenced." (Walker Decl., Ex. A at 5; Id., Ex. B at 5.12.) In both of these documents, however, the chart describing medical FMLA leave merely states that the absence may be "up to a six months within a in a one-year period with proper verification from a physician." (Id., Ex. A at 4; Id., Ex. B at 5.11.)

The Defendants other claim, that the Plaintiff had actual knowledge of the policy, however, is more clearly supported by the facts. The Plaintiff took a previous medical FMLA leave in September 2001 for knee surgery. During this leave, Mr. Sjlobom stated that Jennie Walker, who worked in human resources for JSMC, informed him of the calculation method used by JSMC for FMLA leave eligibility nearly a year before he took the FMLA leave at issue in the present case.[2] (See Johnson Decl., Ex. A at 90-93 (transcript of deposition of Dennis

---

[2] The relevant portion of the deposition of the Plaintiff, Mr. Sjoblom, states that, during his FMLA medical leave of absence from September to November 2001, Jennie Walker, an employee in JSMC's human resources department, informed him of JSMC's calculation method for determining FMLA leave eligibility:

> Q. Did Jennie ever discuss with you how your 12 weeks under the family medical leave act would be calculated?
> A. Well, yeah, she said that it would be – well, that's why I went back right before November – before Thanksgiving, because I was going by the strict sense of the 12 weeks, not three months, you know. . . .
> Q. Did anyone ever tell you that your leave would be calculated not by the calendar year, but by measuring from the first date of your leave absence? . . .
> A. Yeah.
> Q. Yes.
> A. Yeah, I guess Jennie Walker did, yeah.

7

Sjoblom).)  During his FMLA leave in 2002, Mr. Sjlobom stated that he had been informed by Jennie Walker that his first twelve weeks (his FMLA leave) "would be up in the early part of December and then the second 12 weeks [(the non-FMLA leave)] would commence after that." (Id. at 106.)  Mr. Sjlobom even noted that he attempted to return to work in November 2002 because he was concerned that his job might be "in jeopardy" because, "if I didn't get back in a certain amount of time that, you know, they could post my job and fill it."  (Id. at 27.)

By the Plaintiff's own admission, Mr. Sjlobom had actual notice of both how JSMC calculated the twelve month period for purposes of FMLA eligibility, and that he was aware that his FMLA leave expired on December 3, 2002.  After this point, JSMC was under no obligation under the FMLA to hold Mr. Sjoblom's position open for him or to return him to his former position when he reported himself able to return to work on February 18, 2003.  Furthermore, Mr. Sjoblom has failed to demonstrate that he was prejudiced by any alleged violation by JSMC of the FMLA.  See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (holding

---

| | | |
|---|---|---|
| Q. | And what – when did she tell you that? | |
| A. | When – well, she told me when I tried to come back, but she had mentioned it prior to that. | |
| Q. | When you said you tried to come back, is that the November [2001] time frame? | |
| A. | In the November time.  Yeah, I mean then she was kind of explaining the second half, but she said that I had 12 weeks, you know, to be out and then they would protect my job. | |
| Q. | And she advised you that it would be calculated from the first day that you took leave of absence not by calendar year.  Is that correct? | |
| A. | That's correct.  But what I had learned previous to that, that the law says that if the employer doesn't specify, then the benefit goes to the employee. . . . | |
| Q. | But Jennie Walker did specify that this would be calculated, not on a calendar year? | |
| A. | Right.  That's what she told me, yeah, sure. | |

(Johnson Decl., Ex. A at 90-92 (Sjoblom deposition transcript).)

that plaintiff must have been prejudiced by alleged FMLA violation in order to seek relief). Even if the Court were to accept the Plaintiff's argument that Mr. Sjoblom was entitled to an additional 12 weeks of FMLA leave under the calendar year method of calculation, this additional leave would not be available to Mr. Sjoblom until January 1, 2003. It is undisputed, however, that JSMC's obligations under FMLA to return the Plaintiff to his former job, even under the calendar year calculation method, ended on December 3, 2002. An additional twelve weeks of FMLA leave coming in the subsequent year, therefore, would not have given Mr. Sjoblom any rights to his former position under the FMLA, since that right expired on December 3, 2002. Because Mr. Sjoblom received adequate notice of the method employed by JSMC in calculating his eligibility for FMLA leave and he is unable to demonstrate that he was prejudiced by any alleged violation of the FMLA, the Plaintiff's claims under the FMLA are appropriately dismissed.

**B.** **The Plaintiff's State Law Claims Are Dismissed Without Prejudice for Lack of Subject Matter Jurisdiction.**

While not specifically pled in his Complaint, the Plaintiff's brief introduces an additional claim against JSMC for allegedly violating their own policies and procedures in terminating Mr. Sjoblom's employment thereby breaching an implied employment contract between Mr. Sjoblom and JSMC. (Pl. Br. at 2.) Because the Court has granted summary judgment in favor of the Defendant on all of the Plaintiff's federal claims, it need not analyze the merits of this additional state law claim because the Court declines to exercise supplemental jurisdiction over this remaining state law claim. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726

(1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Broderick v. Associated Hosp. Serv., 536 F.2d 1, 8 n. 25 (3d Cir.1976); Caputo v. Fauver, 800 F.Supp. 168, 172 (D.N.J.1992), aff'd, 995 F.2d 216 (3d Cir.1993).  Accordingly, any state law claims for breach of an employment contract are dismissed without prejudice for lack of subject matter jurisdiction.

### IV.  CONCLUSION

For the reasons stated above, and for good cause shown, the Defendant's Motion for Summary Judgment is hereby **GRANTED**.  An appropriate form of order will be filed herewith.

Date:   May 4, 2006

  s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.